This .is* a preceding under a writ'of habeas' corpus, in which, case: the petition', return and proof present th^ following
The petitioner is, and “has been for five or. six years, a-local preacher of -the' Methodist Episcopal Church, South, .duly licensed as such,-according to the rulers -of his church. It is a part'of the discipline of this church that .the licenseof a local preacher must be given by ’the Quarterly' Conference, and signed by the President of the Conference, and must be renewed every ecclesiastical year. A local preacher is a minister of. his church, and his duty is to preach and, perform, such .other duties as may be. assigned by his presiding Elder, or preacher in.charge ; but until he is ordained asa deacon, he cannot administer the sacraments of'his church. He is not entitled to any salary .or pay for preaching, or for the performance of his other ministerial duties. The. petitioner was, prior to the.17th day Of February last, .and has been ever, since that time, located at.the City"of Raleigh, and-has been.constantly and regulary engaged in ' preaching every Sunday, alternately, to two congregations in thecountry near the .city, and at the hospitals án'd also ■ performing other -ministerial duties, by attending class- . méetings, &c.-, all under the superintendence of Dr. Craven,his preache,r in charge. - He has-received no salary or pay ■from Ijtis church or his."congregations, but has supported himself from-the. income of a hotel in the city of Raleigh of which he is-the owner and manager. ■
Having been* enrolled as a conscript and carried to Camp Holmes, the petitioner claims to he discharged under an act of the Confederate Congress, ratified on the Ifoh day of *468 February, 1864, wbicb grants an ¿xemptiofi from military "service in the army HI' the Confederate States to “every-minister of.'religion authorized to preach, according to’the •rules of' his church, and who', at the passage of this act, shall be*regularly employed in the discharge of his ministerial duties.’.' * The commandant of conscripts for this State .denies his right, and insists upon retaining him. in custody a conscript, under a. regulation adopted by the Bureau of Conscription, ho- the following effect: “If the party is .a regular licensed minister, authorized to preach. according to the rules'of his sect, and that is his only busi'ness, he is entitled to exemption, ’ If, however, he depends for kuppoii? on any otjher business, even if he-should preach regularly., he is not entitled to exemption.”
That°t,he case of the'petitioner is obviously' within the -'letter.of the act of Congfess, cannot be denied.' lie is, according to the policy of his church, a'minister of religion, • duly authorized to-preach, and he was, at the time of the .. passage of the act of Congress,' regularly employed in the ■discharge, of.his ministerial duties. He is, therefore, enti-" tied ho be exempted from the performance of military ser-' •vice, unless the .Bureau of Conscription is authorized, by ■ law, to make a regulation other than that preseribéd in the act of Congress, by which be shall«be held as a conscript, or in construing the words of the act, the Bureau has'adopted a construction which is in accordance with its spirit, though not within its strict Letter. I cannot find in the act ' any authority conferred upon the Bureau of Opnscription to frame regulations upon this subject; and I cannot suppose that it sets up a claim to an independent power of legislation. In making provision for carrying . the act into effect, the Bureau must- ascertain its meaning, and in. doing so, must necessarily put a construction upon its language. That construction, though, is no.t conclusively binding upon the ■persods upon: whom the act'ds-to operate, for they have an. .undoubted right to. appeal to, the Courts of law for redress, *469 and it is the decisions of such Courts alone whicl^can finally . settle the disputed-point. .Tjhe true and only enquiry before me then, is whether the Bureau of-Conscription has' adopted the proper construction of the .act in question, according ¡to the intention v>f those who framed it — that is, according to the reason and spirit-of it. . • .
I have already remarked that the . case of the petitioner is obviously within the letter of the Act of Congress. This’ being so, it is incumbent upon the. government to show-that' it is not- also within its reason- and spirit, for it is the ' first among the fundamental rules for the interpretation of laws, to construe, words in their usual and most known signification. . If the words be dfibious, .then we may resort to other, means for ascertaining the will of the Legislature ; ■ among which is that of considering the reason and. spirit of the law, or the cause which moved the Legislature- to enact it, See 1 Blac. ’Com., 59 and 61. Supposing, then,, that there is some dubiousness in the meaning of the act under consideration, let us inquire whqt was the motive which induced members of tlongress to pass it ? About that there’ cannot be the slightest doubt.. Most manifestly, it was to afford to all who should not be called into the field — to the men, women and children wko.shoujd remain at,home — the services of all the ministers of religion, of every grade'in every denomination, who were duly authorized to preach, and who, when the act was passed, were regularly .employed in the discharge .of theif ministerial duties. Can any good, reason be given why these ministrations m,ay not be useful and productive ■ of much.good, though rendered by unpaid ministers ? ^ In the ecclesiastical polity of the M. 'E. Church, South, the local preachers form, as I learn, the most numerous class of-their - ministers. They occupy an importa-nt, though,it may he an-humble field of labor., and are deemed essential in-the scheme of that church, as furnishing the means whereby “ the poor have the gospel prea&hed to them.” The fact that they take .nothing from, ’ ’ *470 ? t <■ ' the coffers of their church for' their Support/, Senders that body much more able to sustain those- who are laboring in the higher- grades of the ministry. These unpaid ministers are thus enabled to effect much good both by what they ¿4 and by what they ‘abstain- from doing.’ , In- working for nothing of an-earthly nature and supporting themselves, •they have, as was well'said by Messrs. Winston and Lewis, the counsel for the petitioner, an illustrious example in St, Paul, -the greatest preacher whom the world has' ever known, who worked with his own hands, at his occupation of a tent-mrkor, that his support might not be a-burden to-the churches of Corinth and'Ephesus. See Paley’s Horae Paulinac, ch. 3, No. 6. Has1 this.-great apostle.ever been considered as having forfeitedanv of the rights as,a preacher •by reason- of such- forbearance4 and self-denial ? On the contrary, has he not furnished to all succeeding ages4 an additional proof of the divinity pf his mission and of the sincerity of his devotion to it, by showing that amidst the severest of trials, persecutions and afflictions, he labored not for the riches and'honors of -this world, biit for the temporal and eternal-good of his,fellow men, and for that crown of gloi'y which his faith assured him was laid upf for him in heaven ?
-From these considerations I am led to belieyothe ground upon which the -Bureau of Conscription would exclude from the exemption contained in the act of the 17th February, 1864, that class of' preachers to, which the petitioner belongs, was not within- the contemplation of -Congress, .and ought not, therefore, to control the decision of the question now before me. ... • 4 ,
But4 there is no doubt another class of ministers of religion havipg authority from their respeetive sects to preach, to whom it might, perhaps, he properly applied; I allude to those miuisters.of different denominations who, being in affluent circumstances, preach occasionally, and .from time to time as their ministerial .services may he required, without receiving any compensation therefor. In analogy to *471 •tbe case of G-rantham, 9 Jones, Í3, in whichgit was decided that under the hot of the 11th Oct., 1862, a mechanic-was not entitled to exemption from military services unless he followed a trade as his regular occupation and employment,it may be that such ministers of'religion should not be ex-' empted under the act of February, .1.864. Oases of this latter kind were pr'obably in the minds of the Bureau of Con- ■ scription, when they adopted |he -regulation to which I . have referred. But it is' manifest that this .class óf cases differs essentially from .that in which the petitioner is embraced. - ' .• -
We have in this State an act which requirs that the rites of matrimony, shall be performed by Justices of the Peace, or"by “ ordained ministers of the gospel of every ^denomination-. !J See Rev. ‘Code of 1856, ch. 68, s. .1, 2. I feel quite sure that there is not a Judge in the land who would for a moment feel himself at liberty to decide' that a marriage was void, because the ceremony 'had been celebrated by an ordaíhed minister who 'depended for support upon some Other business than that of his ministry.
The conclusion to which I have_ come in favor of the petitioner derives additional support-from the fact that .under the act of Oct., 1861, which lis almbst in the precise terms of the last act, m pérson holding the saihe potion in his church as that Occupied, by the. petitioner, 'has’, far as I ha ye heard, ev®e been, enrolled and called M*to thel^litary service as a conSjjadpi/ .
■ My order is tha^-the petitioner be discharged,' aij$ that , his costs be paid by'the defendant. •
WM. H.BATTLE, J.i& 0;
Chapel-Hill, Aug. 8th, 1864.